IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Case No. 03-cv-02203-MSK-BNB

INTERNATIONAL HOUSE OF PANCAKES, INC., a Delaware corporation,
IHOP PROPERTIES, INC., a California corporation, and
IHOP RESTAURANTS, INC., a Delaware corporation,

      Plaintiffs,

v.

ASGHAR HAJLOO, an individual,
SUPERIOR HAJLOO, INC., a Colorado corporation,
PUEBLO HAJLOO, INC., a Colorado corporation, and
ASHLEIGH, INC., a Colorado corporation,

      Defendants.

---

**ORDER DENYING PETITION TO VACATE ARBITRATION AWARD (#62)**

---

THIS MATTER comes before the Court on the Defendants' Amended and Re-Filed

Petition to Vacate Arbitration Award **(#62)** ("the Motion").  Having considered the Motion, the

Response **(#74)**, and the Reply **(#84)**, the Court

    **FINDS** and **CONCLUDES** that:

## I.  Jurisdiction

The Court exercises subject matter jurisdiction pursuant to 9 U.S.C. § 10.

## II.  Factual and Procedural Background

The Plaintiffs commenced this action on November 4, 2003 by filing a Verified Complaint

for Injunctive Relief **(#1)**.  They alleged that the Defendants failed to comply with the terms of

five Franchise Agreements in violation of the Lanham Act and state law.  This Court subsequently

stayed the case pending arbitration of all claims and counterclaims.

An arbitration hearing commenced on January 18, 2005.  Raymond Lee Payne, Jr.,

presided.  He issued an Arbitrator's Interim Reasoned Award ("the Award") on March 18, 2005,

in which he concluded that Mr. Hajloo breached four[1] Franchise Agreements by: (1) violating

their non-competition covenants; (2) improperly using and selling IHOP trademarked products;

and (3) continuing to operate four restaurants, representing that they were IHOP restaurants.  He

found that the Plaintiffs had given the Defendants formal notice of termination of the franchises

based upon non-curable breaches, and the Franchise Agreements allowed for immediate

termination.  The arbitrator also found that there was no evidence that the Plaintiffs discriminated

against Mr. Hajloo and other minorities on the basis of race.  He then directed the Defendants to

surrender possession of two restaurants, leased equipment, and IHOP trademarked items to the

Plaintiffs, to pay royalties to the Plaintiffs from the October 31, 2003 termination date to the date

of surrender, to pay attorney fees and costs to the Plaintiffs, and to make payments upon a

promissory note.  The Award states at its conclusion: "Jurisdiction over this Arbitration shall be

retained pending this Arbitrator completing calculation of the monetary damage awards, to be

done upon the Parties [sic] submission of the required financial information."

The Defendants move to vacate the Award.  The Plaintiffs oppose the motion.

### III.  Issue Presented

The Court must determine whether any portion of the Award should be vacated.

---

[1] The claims pertaining to the fifth Franchise Agreement were withdrawn by agreement of the parties.

## IV.  Standard of Review

Generally, judicial review of an arbitration award is very limited, and courts are to give

great deference to an arbitrator's decision.  *See U.S. Energy Corp. v. Nukem, Inc.*, 400 F.3d 822,

830 (10th Cir. 2005).  The Federal Arbitration Act ("FAA"),[2] 9 U.S.C. § 10, lists only four

circumstances in which a court may vacate an arbitration award:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

However, there are a few additional, limited circumstances in which a court may vacate an

arbitration award, including: (1) when the arbitrator demonstrates a manifest disregard for the

law; (2) when the award violates public policy; and (3) when the award violates the express and

unambiguous terms of the parties' contract.  *See Sheldon v. Vermonty*, 269 F.3d 1202, 1206 (10th

Cir. 2001); *Mistletoe Express Service v. Motor Expressmen's Union*, 566 F.2d 692, 694 (10th

Cir. 1977).  Errors in factual findings or incorrect interpretations of the law are not a basis to

vacate an award.  *See Sheldon,* 269 F.3d at 1206.

Manifest disregard of the law means "willful inattentiveness to the governing law."  *See*

*Bowen v. Amoco Pipeline Co.*, 254 F.3d 925, 932 (10th Cir. 2001).  It requires "more than error

---

[2] The parties agree that the FAA applies because there was a "contract evidencing a transaction involving commerce" in accordance with 9 U.S.C. § 2.  No request to modify or correct the Award under 9 U.S.C. § 11 has been made.

or misunderstanding of the law" – instead, it occurs when an arbitrator "knew the law and

explicitly disregarded it[.]" *See id.* However, an arbitrator is not required to explain his reasons

for an award. *See Wilko v. Swan*, 346 U.S. 427, 436 (1953), *overruled on other grounds,*

*Rodriguez de Quijas v. Shearson/American Exp., Inc.,* 490 U.S. 477 (1989).

There is no "broad judicial power to set aside arbitration awards as against public

policy[.]" *See United Paperworkers Intern. Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 43

(1987). Rather, the public policy exception to enforcement of an arbitration award applies only to

contract disputes. *See Bowen,* 254 F.3d at 932 n.3. It does not involve consideration of whether

an arbitration award violates public policy in a general sense, but it instead involves consideration

of whether the contract, as interpreted in the arbitration award, explicitly conflicts with the law.

*See id.; see also W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 766 (1983).

## V.  Analysis

The Defendants assert the following grounds for vacating the Award: (1) the Award

violates California public policy because the arbitrator allowed the Plaintiffs to terminate the

Defendants' franchises without first providing notice and a right to cure; (2) the Award is

contrary to the terms of the Franchise Agreements; (3) the arbitrator exceeded his authority by

deciding an issue not presented to him when he found that Mr. Hajloo "failed to prove IHOP

discriminated against him or others because of race;" and (4) the arbitrator's decision was in

manifest disregard of the law.

### A.  Does the Award Violate California Public Policy?

The Defendants complain that the Award is contrary to California public policy because

the arbitrator concluded that the Franchise Agreements could be terminated without notice and an

opportunity to cure any breach.  The Plaintiffs respond that the Award does not violate public policy.

The arbitration clause at issue selects California law as the governing decisional law. Therefore, the Court may consider whether the Award is contrary to California public policy.

The Defendants have identified no law which required the Plaintiffs to give them notice and an opportunity to cure prior to terminating the Franchise Agreements.  They rely upon West's Ann.Cal.Bus. & Prof.Code §§ 20020[3] and 20021[4] to support the proposition that, with limited exceptions, there is a public policy against terminating franchise agreements without advance notice and an opportunity to cure.  However, California has limited the scope of this public policy to franchisees and franchised businesses operating in California. The statutes relied upon by the Defendants apply "to any franchise where either the franchisee is domiciled in this state or the franchised business is or has been operated in this state."  West's Ann.Cal.Bus. & Prof.Code § 20015.  The Defendants are not domiciled in California and the franchised businesses were

---

[3] This statute provides:
> Except as otherwise provided by this chapter, no franchisor may terminate a franchise prior to the expiration of its term, except for good cause. Good cause shall include, but not be limited to, the failure of the franchisee to comply with any lawful requirement of the franchise agreement after being given notice thereof and a reasonable opportunity, which in no event need be more than 30 days, to cure the failure.

[4] This statute provides in part:
> If during the period in which the franchise is in effect, there occurs any of the following events which is relevant to the franchise, immediate notice of termination without an opportunity to cure, shall be deemed reasonable: . . .
> (d) The franchisee makes any material misrepresentations relating to the acquisition of the franchise business or the franchisee engages in conduct which reflects materially and unfavorably upon the operation and reputation of the franchise business or system; . . .
> (g) The franchisee repeatedly fails to comply with one or more requirements of the franchise, whether or not corrected after notice; . . .

operated in Colorado.   Because the Defendants have identified no law or public policy with

which the arbitrator's interpretation of the Franchise Agreements conflicts, the Court cannot

vacate the Award on such ground.

In connection with their public policy argument, the Defendants also contend that "the

arbitrator mischaracterized the issue of notice of termination" in his findings because he

misrepresented the nature and content of certain evidence.  This is a challenge to the arbitrator's

factual findings which is not cognizable under the FAA.

**B.  Is the Award Contrary to the Terms of the Franchise Agreements?**

The Defendants contend that the arbitrator misinterpreted the Franchise Agreements

because he concluded that all four Franchise Agreements could be terminated without notice or an

opportunity to cure.  The Plaintiffs respond that when a breach is incurable, as the arbitrator

found here, no opportunity to cure needs to be given.

The arbitrator's determination that an opportunity to cure need not be given for an

incurable breach is not contrary to any express, unambiguous terms of the Franchise Agreements.

The parties agree that three of the four Franchise Agreements at issue expressly provide for

termination without notice as to incurable breaches.  One of the Franchise Agreements is silent on

this issue but does not forbid the arbitrator's conclusion.  Therefore, the Defendants have not

established that the Award is contrary to the terms of the Franchise Agreements.

**C. Did the Arbitrator Decide an Issue not Presented in the Arbitration?**

The Defendants complain that the arbitrator decided an issue that was not properly before

him in the arbitration – whether the Plaintiffs discriminated against Mr. Hajloo on the basis of his

race. The Plaintiffs respond that the issue was presented to the arbitrator by the Defendants.

In the arbitration, the Defendants argued that "IHOP engaged in discriminatory

practices[.]" They also argued that one of the Plaintiffs's representatives discriminated against Mr.

Hajloo because he is an Arab American and that "IHOP has engaged in a pattern of discrimination

and retaliation." Presumably these arguments were offered to support defenses to enforcement of

the franchise agreement.  Because the Defendants raised the issue of race discrimination in the

arbitration, they cannot now complain that the arbitrator addressed such issue.[5]

**D.  Did the Arbitrator Manifestly Disregard the Law?**

The Defendants contend that the arbitrator manifestly disregarded the law in reaching his

decision because: (1) he failed to strictly construe the noncompetition covenants in the Franchise

Agreements when he found that Mr. Hajloo breached them by operating the Longhorn Café and

Elsie's Place; and (2) he incorrectly found that Mr. Hajloo improperly used and sold IHOP

trademarked products when products bearing an IHOP label were found at a non-IHOP

restaurant.  The Defendants contend that such findings were not supported by the evidence.  The

Plaintiffs respond that the Award demonstrates no manifest disregard of the law.

To the extent that the Defendants challenge the sufficiency of the evidence supporting the

arbitrator's findings, such challenge is not cognizable.  In addition, this Court cannot conclude

that the arbitrator manifestly disregarded the law in reaching his legal conclusions.  As stated

previously, it does not matter whether the arbitrator's conclusions are legally correct.  There is no

indication, either in the parties' briefs or in the Award, that the arbitrator knew about binding law

---

[5] With their Response, the Plaintiffs submitted "Respondents' Response to Arbitration Demand and Counter Demand for Arbitration" as Exhibit C, and "Respondents' Closing Brief" as Exhibit D.  The Defendants do not contend that the Court should disregard these documents for any reason.  Indeed, in their Reply, the Defendants make no further arguments regarding the propriety of the arbitrator's decision on the issue of race discrimination.

and willfully failed to follow it.

**IT IS THEREFORE ORDERED** that:

(1)    The Defendants' Amended and Re-Filed Petition to Vacate Arbitration Award

       **(#62)** is **DENIED**.

(2)    Because all claims and counterclaims were submitted to arbitration, and the Court

       declines to set aside the Award, on or before December 16, 2005, the parties shall

       show cause why a) the Award should not be confirmed; and b) the case closed.

Dated this 1st day of December, 2005

       **BY THE COURT:**

       *Marcia S. Krieger*

       Marcia S. Krieger
       United States District Judge

8